## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**PATRICIA LITTELL**,

      Plaintiff,

    v.                                 No.    **CIV 03-493 MCA/RHS**

**ALLSTATE INSURANCE COMPANY,**
and **TODD AAKHUS**,

      Defendants.

## MEMORANDUM OPINION AND ORDER

### INTRODUCTION

THIS MATTER is before the Court on ***Plaintiff's Motion to Remand*** filed May 27, 2003 [doc. no. 6], and ***Plaintiff's Motion for Rule 11 Sanctions*** filed May 28, 2003 [doc. no. 8]. Both motions are fully briefed [doc. nos. 7, 8, 11, 12, 13, 15], and no oral argument is necessary before deciding these matters. After careful consideration of the pleadings,[1] exhibits, and pertinent law, the Court determines that this case will be remanded to state court, but that neither costs, nor Rule 11 sanctions against Defendant Allstate Insurance Company (Allstate) will be assessed. The Court's reasoning is set out below.

---

[1]     Plaintiff's six and a-half page recitation of the underlying allegations was unnecessary and not considered by the Court.

**BACKGROUND**

On April 7, 2003, Plaintiff Patricia Littell (Ms. Littell or Plaintiff) filed a Complaint in the First Judicial District Court for the State of New Mexico (No. D-0101-CV-2003-539) against Allstate and individual Defendant Todd Aakhus (Mr. Aakhus). Ms. Littell's Complaint alleges *inter alia* that her former supervisor at Allstate, Mr. Aakhus, discriminated against her because of her sex. The Complaint sets forth state law claims, including alleged violations of the New Mexico Human Rights Act, intentional infliction of emotional distress, prima facie tort, and retaliatory discharge. [Doc. No. 1, Complaint.]

Also, on April 7, 2003, Ms. Littell served Allstate with the Complaint. [Doc. No. 1, Notice of Removal, ¶ 3.] On the same date, Plaintiff served Mr. Aakhus, via certified mail to his last known address, with a copy of the Complaint. [Doc. No. 1, Complaint.] Mr. Aakhus, through affidavit testimony of his wife, Virginia Lucero, states that Mr. Aakhus never signed for or claimed the certified mail containing the Complaint, even though Ms. Lucero was aware that the post office attempted to deliver "various certified letters" to their home address during the pertinent time period. [Doc. No. 11, Affidavit of Virginia Lucero[2] at ¶ 5.]

On March 19, 2003, prior to filing and serving the Complaint on Allstate, Plaintiff served Allstate, via certified mail, with a copy of her Notice of Appeal from the Human Rights Division Order,[3] requesting a trial *de novo*. [Doc. No. 1, Ex. A.] Ms. Littell also served Mr. Aakhus, via

---

[2]

      Ms. Lucero states that as an attorney, she knew that her husband, Mr. Aakhus, was not served with process in this case. [Lucero Aff. ¶ at 6.] Her husband, Mr. Aakhus, also was an attorney.

[3]

      Ms. Littell filed a charge of discrimination with the New Mexico Human Rights Division against both defendants, alleging sexual harassment and retaliation. She ultimately received a favorable determination of probable cause as to her claims.

certified mail, with a copy of the Notice of Appeal; however, he again did not claim the certified mail containing the Notice of Appeal.  [Lucero Aff. at ¶ 5.]

On April 21, 2003, two weeks after Ms. Littell filed the Complaint in state court, Mr. Aakhus died of complications related to a brain tumor.  [Doc. No. 1, Notice of Removal at ¶ 4; Lucero Aff. at ¶ 3.]

When Ms. Littell filed her Complaint in state court on April 7, 2003, she asserted only state law claims against both Defendants.  Thus, the federal court did not have original jurisdiction as to any federal question under 28 U.S.C. § 1331.  In addition, there was no diversity jurisdiction under 28 U.S.C. § 1332 because the parties were not entirely diverse.  Ms. Littell and Mr. Aakhus both were citizens of New Mexico.  Allstate was a citizen of Illinois for diversity purposes.  [Doc. No. 1, Notice of Removal at ¶ 8.]

On April 28, 2003, after learning of Mr. Aakhus' death on April 21, Allstate removed this action to federal court claiming that the lawsuit was now between completely diverse parties—Ms. Littell, a citizen of New Mexico, and Allstate, a citizen of Illinois.  [Doc. No. 1.]  Mr. Aakhus has not been formally dismissed from this lawsuit and his name remains on the caption.  Allstate admits that this Court did not have diversity jurisdiction of this lawsuit when the Complaint was originally filed due to Mr. Aakhus' non-diverse citizenship, but asserts that Mr. Aakhus' citizenship is irrelevant because he is deceased, was fraudulently joined as a defendant, and service of the lawsuit was never effectuated while he was alive.  [Doc. No. 1, Notice of Removal, at ¶ 9.]  In addition, Allstate claims that Ms. Littell cannot bring any of these claims against Mr. Aakhus' estate as the Complaint asserts only intentional torts against Mr. Aakhus which do not survive his death.  Thus, Allstate's position is that even if Ms. Littell were permitted to commence proceedings against Mr. Aakhus' estate,

diversity jurisdiction remains intact since all of the intentional tort claims abated upon Mr. Aakhus'
death.

On May 27, 2003, Ms. Littell moved to remand this case to state court on a number of
grounds, seeking costs and fees under 28 U.S.C. § 1447(d).  A day later, she filed a request for Rule
11 sanctions based on Allstate's allegation that she fraudulently joined Mr. Aakhus as a defendant to
this lawsuit.

## DISCUSSION

### I.   PLAINTIFF'S MOTION FOR REMAND

#### A.   Pertinent Law as to Removal and Remand

This Court agrees with the Eastern District of Oklahoma Court in acknowledging that
"[j]urisdiction in removal proceedings continue[s] to pose many intricate problems."  Bradley v.
Halliburton Oil Well Cementing Co., 100 F. Supp. 913, 915 (E.D. Okla. 1951).  Indeed, the question
of jurisdiction and removal in this case present a close and difficult call.  Notwithstanding the
uncertainties involved in a particular case, this Court recognizes that it is a court of limited
jurisdiction.  See Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994).  Moreover,
federal removal jurisdiction is statutory in nature and must be strictly construed.  Shamrock Oil & Gas
Corp. v. Sheets, 313 U.S. 100, 108-09 (1941).  "[T]here is a presumption against removal
jurisdiction," and doubtful cases must be resolved in favor of remand.  Laughlin v. Kmart Corp., 50
F.3d 871, 873 (10th Cir.), cert. denied, 516 U.S. 863 (1995); Fajen v. Found. Reserve Ins. Co., 683
F.2d 331, 333 (10th Cir. 1982).  The party asserting jurisdiction has the burden of establishing a right
of removal.  Chavez v. Kincaid, 15 F. Supp. 2d 1118, 1119 (D. N.M. 1998).

Here, the only question is whether this case became removable after the death of the non-diverse defendant, Mr. Aakhus.[4]  The pertinent law regarding questions of removal of this nature, i.e, where the case was not removable when the complaint was first filed, is set forth in 28 U.S.C. § 1446(b).  The second paragraph of subsection (b) states:

> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

Allstate raises a number of arguments as to why removal was proper under the facts of this case.  Ms. Littell asserts that the voluntary/involuntary rule supports remand.  See discussion *infra*.

**B.**  **Whether Plaintiff's Claims Survive Against the Deceased**

Allstate first argues that because Ms. Littell alleged only intentional torts in her complaint against Mr. Aakhus, they do not survive the alleged tortfeasor's death.  [Doc. No. 1, Notice of Removal ¶ 9.]  In support of this proposition, Allstate cites a New Mexico survival statute, NMSA 1978 § 37-2-1 and New Mexico common law interpretations of that statute.  Allstate posits that Section 37-2-1 and New Mexico case law should be read to mean that intentional torts do not survive the death of an alleged tortfeasor.

Section 37-2-1 provides:

> In addition to the causes of action which survive at common law, causes of action for mesne profits, or for an injury to real or personal estate, or for any deceit or fraud, shall also survive, and the action may be brought, notwithstanding the death of the person entitled or liable to the same.  The cause of action for wrongful death

---

4

       The parties do not dispute that the required jurisdictional amount of $75,000 is met with respect to diversity jurisdiction.

and the cause of action for personal injuries, shall survive the death of the party responsible therefor.

That statute does not expressly define which causes of action survived at common law or the phrase, "cause of action for personal injuries." Id.

Allstate contends, however, that Rodgers v. Ferguson, 89 N.M. 688, 691 (Ct. App.), cert. denied, 90 N.M. 7 1976 (1976), supports its view that intentional tort claims do not survive. In Rodgers, the Court of Appeals analyzed the identical prior version of § 37-2-1, and held that a deceased plaintiff's negligence claims survived his death, where the plaintiff died before the Complaint was filed, and his death was unrelated to the subject motor vehicle accident. Id. at 694. In finding that negligence claims survived, the Court noted that the "historical application of the non-survival rule was to violent and intentional torts." Id. at 691. Allstate argues from this dictum that § 37-2-1 must be interpreted to mean that intentional tort claims are barred if the alleged tortfeasor dies.

Allstate also cites to an unpublished District of New Mexico opinion, in which the district court dismissed claims brought on behalf of the plaintiff's estate, finding that they did not survive the plaintiff's death. Medina v. Pacheco, No. CIV 95-1004 JC, Mem. Op. (D.N.M. July 6, 1996), aff'd, 161 F.3d 18, 1998 WL 647784 (Table, Text in Westlaw) (10th Cir. 1998). The Tenth Circuit affirmed the trial court's dismissal of the § 1983 claims, reasoning that the § 1983 claims involved alleged intentional conduct and that New Mexico courts would place these types of claims in the category that did not survive the plaintiff's death. Id. at *5.

Medina, like Rodgers, is distinguishable from these facts. In both those cases, the plaintiff died *before* the lawsuit was filed. Here, while it may not be significant that it is the individual defendant who died rather than a plaintiff, the salient factor is that the defendant died *after* the lawsuit

-6-

was already filed and pending.  The reason this distinction is important is because it implicates a different survival statute.

Section 37-2-4 provides:

> No action pending in any court shall abate by the death of either, or both, the parties thereto, except an action for libel, slander, malicious prosecution, assault or assault and battery, for a nuisance or against a justice of the peace [magistrate] for misconduct in office, which shall abate by the death of the defendant.

In other words, if a defendant dies before commencement of a lawsuit, § 37-2-1 determines which claims can be brought against the estate.  In contrast, where the party dies after the complaint was filed, the action is analyzed under § 37-2-4.  Padilla v. Estate of Griego, 113 N.M. 660, 663 (Ct. App. 1992).

In Padilla, the Court addressed whether claims survived in circumstances where the death of an individual occurred prior to filing the complaint, and concluded that § 37-2-1 is the statute governing these types of actions.  Id.  In contrast, however, § 37-2-4, "by its terms," describes which claims abate in a *pending* lawsuit, such as this where the party dies *after* the complaint was filed.[5]  Id.  See also Rodgers, 89 N.M. at 692 (discussing § 37-2-4).

Here, there was a pending action in state court before Mr. Aakhus died.  The claims raised against him include intentional discrimination, intentional infliction of emotional distress, retaliation, prima facie tort, and retaliatory discharge.  By the explicit language of § 37-2-4, such claims were not

---

[5]    To interpret the two New Mexico survival statutes to mean different causes of action can be brought depending on the timing of an alleged tortfeasor's death may not make sense.  Yet, such potential inconsistencies are more a matter for the legislature than this Court.

abated when Mr. Aakhus died.  Thus, the Court finds no merit in Allstate's argument that the intentional tort claims do not survive.[6]

### C.     Whether Death Automatically Removes Deceased from Lawsuit

Allstate's second argument as to removal is that once Mr. Aakhus died, he simply no longer is a party to the lawsuit.  Stated differently, Allstate contends that Mr. Aakhus' death automatically removed him as a party to the suit.  Thus, Allstate urges that the complaint was removable because there was complete jurisdiction between the remaining parties.

In particular, Allstate relies on Bradley, 100 F. Supp. at 916 for this proposition.  Admittedly, the underlying facts in Bradley are similar.  The sole non-diverse defendant died after the complaint was filed, and the case was removed.  The trial court  reasoned the death of the individual defendant left the status of the case at the time of removal as being wholly between diverse parties, notwithstanding the non-diverse defendant's name in the caption.  Id.  The death of the defendant was brought about by an act of God and was not attributable to the actions of either party or the court; thus removal was proper.  Id. at 917-18.

While Bradley presents a similar factual scenario, that case is not binding on this Court's decision.  Moreover, the Eastern District of Oklahoma Court's decision emphasized the importance of a defendant's right of removal over the plaintiff's right to select the forum of her choice.  Id. at 918.  This Court elects to do just the opposite.  "Defendant's right to remove and plaintiff's right to choose his forum are not on equal footing."  Burns v. Windsor Ins. Co., 31 F.3d 1092, 1095 (11th

---

[6]

        The Court also notes that if the Estate is substituted for Mr. Aakhus, the legal representative of the estate of a decedent must be deemed a citizen of the same state of the decedent.  28 U.S.C. § 1332(C)(2).  Thus, assuming Plaintiff's claims against Mr. Aakhus survive and the estate is properly substituted, there will not be diversity of citizenship.

Cir. 1994). This is true based, at least in part, on the proposition that removal statutes are to be construed narrowly. "[W]here plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand." Id. (internal citation omitted). See also Archuleta v. Lacuesta, 131 F.3d 1359, 1363 (10th Cir. 1997) (while deference to plaintiff's choice of forum is not sufficient alone to warrant remand, it can bolster a decision to remand); Miera v. Dairyland Ins. Co., 143 F.3d 1337, 1339 (10th Cir. 1998) (courts "must rigorously enforce Congress' intent to restrict federal jurisdiction in controversies between citizens of different states.").

Therefore, removal on this basis is rejected.[7]

## D.     Whether Citizenship of Deceased Non-Diverse Defendant is Disregarded

Third, Allstate contends that Mr. Aakhus' citizenship is irrelevant for purposes of determining diversity jurisdiction since he was never properly served. See 28 U.S.C. § 1441(b) (providing that an action is removable only if none of the parties in interest "properly joined and served" is a citizen of the State in which the action is brought). Allstate's argument is questionable since it appears that Mr. Aakhus was avoiding service, and that he may have had notice of the claims asserted by Ms. Littell by the time she was attempting to effect service on him.

In any event, similar defendants asserting the same removal argument have not fared well. "Whenever federal jurisdiction in a removal case depends upon complete diversity, the existence of

---

[7]          The Court also notes a somewhat similar case decided by the District of Hawaii federal court. In Foster v. A.H. Robins Co., 61 F. Supp. 2d 1121 (D. Hi. 1999), the defendant removed the lawsuit after it received notice of the non-diverse defendant's death. The defendant argued that under Hawaii law, a decedent was not a proper party of an action. The court rejected that argument as premature since the deceased defendant had not been dismissed from the lawsuit and could not be dismissed until the time ran as to substituting the deceased's estate or representative. Id. at 1122-23. It is uncertain here whether Allstate argues that the time has run for Ms. Littell to move to substitute the estate or representative for Mr. Aakhus, and/or when, if at all, Mr. Aakhus' death was "suggested upon the record by service of a statement of the fact of the death." Fed.RCiv.P. 25(a)(1).

-9-

diversity is determined from the fact of citizenship of the parties named and not from the fact of

service."  New York Life Ins. Co. v. Deshotel, 142 F. 3d 873, 883-84 (5th Cir. 1998) (internal

citations omitted).  In In re Norplant Contraceptive Prods. Liab. Litig., 889 F. Supp. 271, 273-74

(E.D. Tex. 1995), defendants made a similar argument that resident defendants who were not served

could be ignored for purposes of determining diversity jurisdiction.  The court rejected the argument,

concluding that "the overwhelming majority of reported cases are of the opposing view and support

remanding this case."  Id. at 274.

> For similar reasons, this Court rejects Allstate's "service" argument, particularly here where
> it appears that service was being avoided by Mr. Aakhus.

### E.      Whether Fraudulent Joinder Supports Removal

> Yet another basis for removal is Allstate's contention of fraudulent joinder.  Specifically,
> Allstate asserts that Ms. Littell fraudulently joined Mr. Aakhus as a defendant in the lawsuit because,
> at the time of removal, Plaintiff could state no claim against Mr. Aakhus.  [Doc. No. 1, Notice of
> Removal at ¶ 9.]  Indeed, Allstate's argument discussed *supra* that a deceased defendant's citizenship
> should be disregarded is "in essence an assertion of fraudulent joinder.  Marcotte v. State Farm Mut.
> Auto. Ins. Co., 1996 WL 169228 at *2 (E.D. La. April 10, 1996).

> "Fraudulent joinder is a well established exception to the voluntary-involuntary rule."  Insinga,
> 845 F.2d at 254.

> > Joinder may be deemed fraudulent if 1) there is no possibility that the plaintiff can
> > prove a cause of action against the non-diverse defendant; [or] 2) there is outright

fraud in the plaintiff's pleading of jurisdictional facts. . . . [8]  The removing party bears a heavy burden of proving that joinder was fraudulent.

A.W. Herndon Oil Co. v. Transamerica Occidental Life Ins. Co., 201 F. Supp. 2d 1213, 1215 (M.D. Ala. 2002) (internal citations omitted).

Here, the Court has already rejected Allstate's argument that Ms. Littell's intentional tort claims cannot survive the death of Mr. Aakhus, who died after the complaint was filed.  Thus, in examining the complaint and claims as they existed when the petition for removal was filed, the Court cannot conclude there was no possibility that Ms. Littell can prove a cause of action against the non-diverse defendant or estate, if substituted.  Moreover, this is not a case where the plaintiff **amended** her complaint to add a non-diverse defendant purportedly to defeat federal court jurisdiction.  See Mayes v. Rapoport, 198 F.3d 457, 460 (4th Cir. 1999).  In other words, this is not a scenario where a plaintiff joins a resident defendant who has no real connection with the controversy.  Accordingly, the Court rejects Allstate's theory of fraudulent joinder because it fails to demonstrate that there is no possibility that Ms. Littell can establish a cause of action against Mr. Aakhus.

### F.     Whether Voluntary-Involuntary Rule Supports Remand

In support of remand, Plaintiff relies on the "long-standing, judicially created 'voluntary-involuntary' rule."  Insinga v. LaBella, 845 F.2d 249, 252 (11th Cir. 1988).

This is a rule developed in diversity cases "that if the resident [non-diverse] defendant was dismissed from the case by the voluntary act of the plaintiff, the case became removable, but if the dismissal was the result of either the defendant's or the court's action against the wish of the plaintiff, the case could not be removed."

---

8

    Defendant does not contend that Ms. Littell's Complaint alleges fraudulent jurisdictional facts.

Id. (internal citations omitted).   See 16 Moore's Federal Practice § 107.14[2][h].   The voluntary/involuntary distinction clearly existed prior to 1949, before the above quoted language in § 1446(b) was amended.   While there has been some disagreement as to whether the rule survived the 1949 amendment to § 1446, the "trend appears to retain the distinction." Higgins v. E.I. DuPont de Nemours & Co., 863 F.2d 1162, 1166 (4th Cir. 1988).   Indeed, the Tenth Circuit recognized that the "voluntary-involuntary test has become well accepted." DeBry v. Transamerica Corp., 601 F.2d 480, 487 (10th Cir. 1979).

Thus, while diversity is generally established at the time of removal, "a case may nevertheless not be removable depending on whether the non-diverse party is eliminated from the state action by voluntary or involuntary dismissal." Higgins, 863 F.2d at 1166.   In other words, even where an event occurs after the filing of the complaint that gives rise to federal jurisdiction, "the ability of a defendant to remove is not automatic; instead, removability is governed by the 'voluntary/involuntary rule.'" People of the State of Cal. v. Keating, 986 F.2d 346, 348 (9th Cir. 1993) (citing Self v. Gen. Motors, 588 F.2d 655, 657-60 (9th Cir. 1978) and Poulos v. Naas Foods, Inc., 959 F.2d 69, 71-72 (7th Cir. 1992)); DeBry, 601 F.2d at 488 ("general effect of the test is that a cause cannot be removed where the removability is a result of some development other than a voluntary act of plaintiff.")

Voluntary acts by the plaintiff, e.g., the plaintiff's dismissal of, or decision to settle with the only non-diverse defendant, demonstrate the plaintiff's desire to conclude the case against the non-diverse party.   Thus, a number of courts have held that when the plaintiff takes a voluntary action that removes the only non-diverse defendant, the case is removable (if the other pre-requisites of diversity jurisdiction are met).   DeBry, 601 F.2d at 488 (plaintiff's voluntary act gave rise to removal of the case).   See also Self, 588 F.2d 657 (holding that lawsuit must remain in state court unless the

plaintiff's voluntary act brought about a change to render the case removable); <u>Poulos</u>, 959 F.2d at 72 (affirming district court's decision that case did not become removable upon dismissal of only non-diverse defendant where plaintiff did not take voluntary act to dismiss that party); <u>Higgins</u>, 863 F.2d at 1166 (discussing voluntary/involuntary rule and finding that the plaintiff's state action may have been improperly removed); <u>People of the State of Cal.</u>, 986 F.2d at 348 (in federal question case, holding that plaintiff did not take any voluntary action in transforming case to one "arising under" federal law; thus, the plaintiff did not render the case removable and the federal court improperly exercised removal jurisdiction); <u>Insinga</u>, 845 F.2d 249 (notwithstanding the favorable discussion of the voluntary/involuntary rule, the court held that the rule was inapplicable to the facts of that case where defendant dismissed on jurisdictional grounds).

In <u>Poulos</u>, the Seventh Circuit explained the dual purposes of the voluntary/involuntary rule.

> First, the rule contributes to judicial economy. Removal following an involuntary dismissal may be only temporary: the plaintiff may appeal the dismissal in state court, and success on appeal would lead to the reinstatement of the non-diverse party, destroying federal jurisdiction and compelling remand to the state court. . . . Second, some courts have invoked a general principle of deference to the plaintiff's choice of forum. Allowing removal only when the plaintiff voluntarily dismisses a defendant ensures that the plaintiff will not be forced out of state court without his consent. Of course, this principle of deference is entirely inconsistent with the apparent purpose of the removal statute—to give defendants a means to escape the plaintiff's hometown forum—but it is consistent with our general desire to limit federal jurisdiction.

959 F.2d at 72 (internal citations omitted).

Here, it is obvious that Mr. Aakhus' death was not brought about by any voluntary act by Plaintiff. Similarly, however, Allstate did nothing to bring about Mr. Aakhus' death. Thus, the Court recognizes that this is not a case where a defendant might be accused of taking some kind of action to manipulate removal. <u>See</u> <u>DeBry</u>, 601 F.2d at 488.

Notwithstanding the difficulty of the issue presented by these facts, the Court concludes for a number of reasons that the voluntary/involuntary rule applies and that remand is, therefore, required.  First, the Tenth Circuit articulated the rule as follows:  "The general effect of the test is that a cause cannot be removed where the removability is a result of some development other than a voluntary act of plaintiff."  Id. at 488.  Clearly, the pertinent development was "other than a voluntary act of plaintiff."   The development at issue was involuntary in nature.  "[I]nvoluntary changes in a case do not create removability if the plaintiff's complaint was not removable.  ***Thus, for example, the death of a nondiverse defendant does not create removability.***"  16 Moore's Federal Practice § 107.14[2][h][i] (emphasis added).  Stated differently, while Mr. Aakhus' death was not the result of actions by any party or by a Court Order, his death most likely was adverse to the wishes of Ms. Littell.  Accordingly, the involuntary change to the case does not support removability.

Second, this conclusion comports with the second purpose behind the rule—i.e., that Plaintiff is the master of her Complaint and her choice of forum.  Self, 588 F.2d at 656-59; Great N. Ry. Co. v. Alexander, 246 U.S. 276, 282 (1918).  Moreover, this decision is consistent with general principles regarding the limited jurisdiction of this Court and the need to strictly construe the removal statute.  "[W]here jurisdiction of the federal court is doubtful the case should be remanded to the state court where jurisdiction is unquestioned."  Bradley, 100 F. Supp. at 915 (internal citations omitted).

Therefore, the Court concludes that the voluntary/involuntary rule warrants the finding that this case should be remanded.

### G.   Plaintiff's Request for Attorney Fees and Costs

Ms. Littell's motion to remand also requests fees and costs.  Title 28 U.S.C. § 1447(c) states that "[a]n order remanding the case may require payment of just costs and any actual expenses,

including attorney fees, incurred as a result of the removal."  The critical issue in deciding whether to award fees and costs is the propriety of the removal.  <u>Daleske v. Fairfield Cmtys.</u>, 17 F.3d 321, 324 (10th Cir.), <u>cert. denied</u>, 511 U.S. 1082 (1994).  The finding of bad faith is not a prerequisite to an award of fees and costs; however, the mere fact that removal was improper does not automatically support such an award.  <u>See</u> <u>Excell, Inc. v. Sterling Boiler & Mechanical, Inc.</u>, 106 F.3d 318, 322 (10th Cir. 1997); <u>Valdes v. Wal-Mart Stores, Inc.</u>, 199 F.3d 290, 292 (5th Cir. 2000).  Here, where Allstate's removal presented a close and difficult call, the Court elects in its discretion to deny the request for fees and costs.

### H.   Conclusion

For all of the above-stated reasons, the Court determines that it lacks subject-matter jurisdiction over this matter and that it should be remanded to state court.  Plaintiff's related request for fees and costs will be denied.

## II.   PLAINTIFF'S MOTION FOR RULE 11 SANCTIONS

Ms. Littell argues that Allstate's assertion that she fraudulently joined Mr. Aakhus in the state court proceeding (or that she did not elect to voluntarily dismiss him from the lawsuit after his death) constitutes improper harassment and warrants Rule 11 sanctions.

When speaking of jurisdiction, "[f]raudulent joinder 'is a term of art used to describe not only the deceptive practice of joining a resident defendant solely to defeat diversity, but also any improper joinder.'"  <u>Montanez v. Solstar Corp.</u>, 46 F. Supp. 2d 101, 103 (D. P.R. 1999) (internal citation omitted).  Here, there does not appear to be, nor could there be, any allegation by Allstate that Ms. Littell was attempting to mislead or deceive the Court by including Mr. Aakhus as a defendant in this lawsuit.  Instead, Allstate's fraudulent joinder argument apparently is based on its assertion that

-15-

joinder was improper.  While Allstate's theory of fraudulent joinder in this case is, at best, weak, the Court does not conclude that it warrants Rule 11 sanctions.  Therefore, the request for Rule 11 sanctions will be denied.

**IT IS, THEREFORE, ORDERED** that *Plaintiff's Motion to Remand* filed May 27, 2003 [doc. no. 6] is **GRANTED**, with the result that this lawsuit is **REMANDED** to the First Judicial District Court for the State of New Mexico.

**IT IS FURTHER ORDERED** that Plaintiff's request for attorney fees and costs is **DENIED.**

**IT IS FURTHER ORDERED** that *Plaintiff's Motion for Rule 11 Sanctions* filed May 28, 2003 [doc. no. 8.] is **DENIED**.

**SO ORDERED**, this 30th day of July, 2003, in Albuquerque, New Mexico.

**M. CHRISTINA ARMIJO**
*United States District Judge*

-16-